# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
### GALVESTON DIVISION

| | | |
|---|---|---|
| LONG BA NGUYEN, and | § | |
| LAN N HUYNH, each individually | § | |
| and on behalf of all those similarly | § | |
| situated, | § | |
| Plaintiffs | § | |
| | § | |
| v. | § | CIVIL ACTION NO. _____ |
| | § | |
| BANK OF AMERICA, N.A. | § | |
| Defendant. | § | |

## CLASS ACTION COMPLAINT

TO THE HONORABLE UNITED STATES DISTRICT COURT:

COME NOW the Plaintiffs, through undersigned counsel, on behalf of themselves and all persons similarly situated, and allege the following based on personal knowledge as to allegations regarding the Plaintiffs and on information and belief as to other allegations against Defendant, Bank of America, N.A. ("Bank of America" or "Bank"), and show the following:

## INTRODUCTION

1.     This is a civil action seeking monetary damages, restitution and declaratory relief from Bank of America, arising from its deceptive, unfair and unconscionable conduct in the processing of automatic mortgage payments; the persistent miscalculation of interest charges when applying mortgage payments; and its unilateral modification of its automatic mortgage payment agreements.  These schemes, and each of them, have

resulted in Plaintiffs paying more interest than agreed, and paying such interest over a longer period of time than agreed.

2.      Bank of America offered its home mortgage finance customers an automatic mortgage deduction plan called "PayPlan."   Bank of America customers include those customers of Countrywide Financial that became customers of Bank of America when the Bank purchased Countrywide outright in 2008.   Bank of America promoted PayPlan by telling customers that if he or she enrolled in PayPlan, and agreed to allow the Bank to withdraw the monthly mortgage payment owed in either twice monthly or weekly installments — the total of the payments over the course of the month roughly equaling the total monthly payment owed — the customer would effectively pay off their mortgage sooner, resulting in less interest charges to the customer over the life of the mortgage loan.   The customers agreed that payments would be withdrawn on the same day of the month, each month, such as the first and the fifteenth of the month.

3.      Bank of America manipulated the dates of the actual withdrawal from the customer's checking account and systematically and persistently withdrew the customer's payment one to five days (or even more) later than agreed.   As a result of this conduct, more interest accrued on the unpaid balance of the customer's mortgage loan.   Thus, when a payment was actually applied later than agreed, more of that payment went towards interest rather than principal than if the payment had been applied earlier, as agreed.   Bank of America persisted in this practice for its own gain to get more interest from the customer, because the customer had enough funds in his or her account to make the payment when agreed.   Because of this practice, customers have paid thousands of

dollars more in interest than they would have over the course of the loan than they would have paid had Bank of America withdrawn the payments as agreed.  Thus, despite its promotion of the PayPlan to customers as a tool to save money, Bank of America actually used this tool to take more money from its customers.

4.     Bank of America has also offered and continues to offer versions of PayPlan that simply automatically debit a customer's bank account for loan payments then due without any benefit of an earlier satisfaction of the mortgage.  However, Bank of America still takes advantage of the later than agreed withdrawal dates to manipulate interest charges incurred by customers and thereby garner higher interest payments from customers than it was rightfully due.

5.     Bank of America further manipulated PayPlan and non-PayPlan customer payments alike by processing customer mortgage payments such that customers paid more interest than should have been due.  Rather than truthfully following and reporting the simple interest formula — a calculation which provides a daily interest charge on the loan's outstanding balance between payments — the Bank would instead charge interest for a certain number of days that did not reflect the actual number of days between payments.  By using a higher number of days between payments than actually had occurred, the Bank was able to take more of a customer's payment as the interest payment, rather than applying the correct (higher amount) towards principal.  Thus, over the life of the loan, this scheme allowed the Bank to charge a mortgage loan customer higher interest charges than would have been paid if the Bank had properly calculated the actual number of days between payments and applied the proper daily interest charge.

- 3 -

6.     Moreover, when Bank of America modified a customer loan, it unilaterally reset the loan maturity date years past the original agreed upon maturity date, without disclosing the new maturity date and loan terms to the customer.  For example, in the case of the Plaintiffs, the new payment schedule, after the loan was modified to correct the promised interest rate, extended the loan obligation from its original maturity date in 2016 to the year 2029, resulting in tens of thousands of dollars in interest charges that would never have accrued under the original agreement between the parties.

## JURISDICTION AND VENUE

7.     This Court has original jurisdiction of this action under the Class Action Fairness Act of 2005.  Pursuant to 28 U.S.C. §§ 1332(d)(2) and (6), this Court has original jurisdiction because the aggregate claims of the putative Class members exceed $5 million, exclusive of interest and costs, and at least one of the Plaintiffs is a resident of a different state than Bank of America.

8.     Venue is proper in this district pursuant to 28 U.S.C. § 1391 because Bank of America is subject to personal jurisdiction here and regularly conducts business in the Southern District of Texas, and because a substantial part of the events or omissions giving rise to the claims asserted herein occurred and continue to occur in this district.

## THE PARTIES

9.     Plaintiff Long Ba Nguyen, and Plaintiff Lan N. Huynh, husband and wife, are residents of the State of Texas.

10.     Bank of America is a national bank incorporated in the State of Delaware which maintains its principal place of business in Charlotte, North Carolina.  Bank of

America regularly and systematically conducts business throughout the State of Texas, including in this District.   Among other things, Bank of America is engaged in the business of providing mortgage loans to millions of consumers, including Plaintiffs and members of the putative Classes.   Bank of America is the nation's largest mortgage servicer.   Bank of America may be served through its registered agent, Barbara Pennywell, 500 Dallas, Suite 31000, Houston, Texas 77002.

11.     Citation and service are requested upon the Defendants.

## CLASS ALLEGATIONS

12.     Plaintiffs bring this action on behalf of themselves and all others similarly situated pursuant to Fed. R. Civ. P. 23.   This action satisfies the numerosity, commonality, typicality, adequacy, predominance and superiority requirements of Rule 23.

13.     The proposed classes are defined as:

All Bank of America mortgage loan customers in the United States who, within the applicable statute of limitations preceding the filing of this action to the date of class certification, were enrolled in a "PayPlan" automatic withdrawal payment plan and such withdrawals were done on days other than set forth in the customer agreements.

All Bank of America mortgage loan customers in the United States who, within the applicable statute of limitations preceding the filing of this action to the date of class certification, whose daily interest charges between payments were miscalculated by the Bank.

> All Bank of America mortgage loan customers in the United States who, within the applicable statute of limitations preceding the filing of this action to the date of class certification, had their loan unilaterally modified by the Bank such that their original loan maturity date extended beyond the maturity date originally agreed upon.

(collectively, "The National Classes"); and

> All Bank of America customers residing in Texas during the applicable statute of limitations preceding the filing of this actions to the date of class certification, for the purpose of asserting claims under the Texas state consumer protection statutes (the "State Subclasses").

The National Classes and the State Subclasses are collectively referred to as the "Classes" or "Class Members."

14.    Plaintiffs reserve the right to modify or amend the definition of the proposed Classes before the Court determines whether certification is appropriate.

15.    Excluded from the Classes are Bank of America, its parents, subsidiaries, affiliates, officers and directors, any entity in which Bank of America has a controlling interest, all customers who make a timely election to be excluded, governmental entities, Plaintiffs' Counsel and their staff, and all judges assigned to hear any aspect of this litigation, as well as their immediate family members.

16.    The members of the Classes are so numerous that joinder is impractical. The Classes consist of thousands of members, the identity of whom is within the knowledge of and can be ascertained only by resort to Bank of America's records.

17.    The claims of the representative Plaintiffs are typical of the claims of the Classes in that the representative Plaintiffs, like all Class members: 1) were enrolled in PayPlan and as a result of Bank of America's practice of withdrawing payments later

than agreed, incurred higher interest charges; and/or 2) were subject to the Bank's purposeful miscalculation of daily interest charges accruing between payments to ensure higher interest payments to the Bank than contemplated or agreed; and/or 3) were subject to a unilateral modification of their mortgage loan that resulted in an undisclosed and not agreed upon extension of their loan maturity date for years past the original agreed upon date, resulting in customers incurring higher interest payments. The representative Plaintiffs, like all Class members, have been damaged by Bank of America's misconduct in that they incurred and/or will continue to incur higher interest charges as a result of the Bank's deceptive, unfair and unconscionable practices.  Furthermore, the factual basis of Bank of America's misconduct is common to all Class members, and represents a common thread of deceptive, unfair and unconscionable conduct resulting in injury to all members of the Classes.

18.     There are numerous questions of law and fact common to the Classes and those common questions predominate over any questions affecting only individual Class members.

19.     Among the questions of law and fact common to the Classes are whether Bank of America:

a.     Does not and/or did not withdraw payments as agreed in its PayPlan automatic mortgage payment agreements;

b.     Does and/or did deceptively promote its PayPlan option as a means by which customers would lessen their interest payments over the course of the mortgage loan;

c.   Does and/or did receive more in interest from customers as a result of its later than agreed withdrawals of PayPlan payments;

d.   Does and/or did commit fraud on its customers in the manner in which it promoted PayPlan and manipulated PayPlan mortgage payment processing to wrongfully gain more in interest payments from customers;

e.   Does and/or did purposely and persistently miscalculate the number of days between customer loan payments such that it reported to customers it was due a higher interest payment than was actually due;

f.   Does and/or did unilaterally modify customer mortgage loan agreements such that loan maturity dates were extended years beyond the original agreed-upon maturity date without disclosure or further agreement from the customer;

g.   Is and/or was unjustly enriched through its PayPlan policies and practices; and

h.   Is and/or was violating the Texas Deceptive Trade Practices Act.

20.   Other questions of law and fact common to the Classes include:

a.   The proper method or methods by which to measure damages, and

b.   The declaratory relief to which the Classes are entitled.

21.   Plaintiffs' claims are typical of the claims of other Class members, in that they arise out of the same wrongful PayPlan related policies and practices and the same or substantially similar PayPlan agreements and other related documents. Plaintiffs have suffered the harm alleged and have no interests antagonistic to the interests of any other Class member.

22.     Plaintiffs are committed to the vigorous prosecution of this action and have retained competent counsel experienced in the prosecution of class actions and, in particular, class actions on behalf of consumers and against financial institutions. Accordingly, Plaintiffs are adequate representatives and will fairly and adequately protect the interests of the Classes.

23.     A class action is superior to other available methods for the fair and efficient adjudication of this controversy.  Since the amount of each individual Class member's claim is small relative to the complexity of the litigation, and due to the financial resources of Bank of America, no Class member could afford to seek legal redress individually for the claims alleged herein.  Therefore, absent a class action, the Class members will continue to suffer losses and Bank of America's misconduct will proceed without remedy.

24.     Furthermore, even if class members could afford individual litigation, the number of claims is so numerous and with causes of action arising in numerous jurisdictions, the need for judicial economy and consistent decisions warrants a class action.  Given the complex legal and factual issues involved, individualized litigation would significantly increase the delay and expense to all parties and to the Court. Individualized litigation would also create the potential for inconsistent or contradictory rulings.  By contrast, a class action presents far fewer management difficulties, allows claims to be heard which might otherwise go unheard because of the relative expense of bringing individual lawsuits, and provides the benefits of adjudication, economies of scale and comprehensive supervision by a single court.

## COMMON FACTUAL ALLEGATIONS

### The Later Than Agreed Automatic Payment Withdrawal Scheme

25.     Bank of America promoted a "PayPlan" to its customers as a convenient way to pay down the customer's mortgage faster, by making two or more payments per month, rather than one payment per month.  By following PayPlan, customers were promised, a mortgage would be paid off faster resulting in the payment of less interest to the Bank over the life of the loan.

26.     Under PayPlan, customers and the Bank agreed that payments would be withdrawn from checking accounts on the same dates each month, such as the first and the fifteenth of every month.

27.     Instead of withdrawing payments as agreed on the agreed upon dates, Bank of America persistently and continually withdrew payments from one to five days later than agreed.

28.     As a result of this late withdrawal practice, customer mortgage balances were higher than they would have been for that period of days between the agreed upon withdrawal date and the date of actual withdrawal.  During that interim period, the loan balance was still subject to interest, and therefore interest was accruing in that interim period.  Because the loan balance was higher during that interim period than it should have been based on the agreement with the customer, the Bank was earning more interest on the higher balance.  Therefore when the payment was actually withdrawn, more of the payment was applied to interest than to principal than would have been the case if the payment had been withdrawn on the date agreed.

29.     Over the life of the loan, the extra interest the Bank was able to charge during these interim periods amounts to an exorbitant and unjust sum of money that the Bank collected from customers that it otherwise would not have collected had it performed as agreed in a program that it promised customers would save them interest charges over the life of the loan.

30.     Upon information and belief, Bank of America utilized this later than agreed withdrawal scheme for all mortgage loan customers enrolled in any of its PayPlan or other automatic payment withdrawal plans.

### The Miscalculation of Simple Interest/Daily Interest Charges Scheme

31.     The Bank utilizes a simple interest formula to calculate the interest per day accruing on the outstanding loan balance between customer payments.  The formula is expressed as:  (principal balance x interest rate)/365 x number of days between payments.

32.     The Bank purposely and persistently used the wrong number of days between payments than actually had occurred in order to garner more in interest charges from a customer payment and have less of that payment apply towards principal. Customers did not agree to this scheme and it was not disclosed to them.

33.     Thus, over the course of the loan customers are/were charged and paid higher interest charges than the Bank was entitled to receive had it properly calculated and applied the daily interest formula.

### The Unilateral Extension of Loan Maturity Date Scheme

34.     At times the Bank would unilaterally modify customer mortgage loans without proper disclosure to or agreement from the customer.  When the Bank performed

this unilateral modification, the customer's loan maturity date would be unilaterally extended beyond the agreed upon maturity dates.

35.     As a result, customers are subject to thousands of dollars in excess interest charges than they had ever contemplated or agreed to when entering into a mortgage loan agreement with the Bank.

### The Plaintiffs' PayPlan Experience

36.     During the summer of 2001, Plaintiffs sought to re-finance their home mortgage with Bank of America and did, in fact, refinance their loan with the Bank. (Exhibit A).  The Plaintiffs' primary contact with Bank of America was through their branch assistant vice-president, Lila Vu.  In connection with the loan, Ms. Vu and Bank of America offered some additional services: an automatic payment withdrawal service and a borrower's protection plan.  This automatic payment withdrawal service was offered as part of the mortgage loan agreement, and there is no separate fee for it.  The loan itself was for 15 years and at a fixed interest rate of 7.25%.  (Exhibit A).  As part of the re-finance agreement, Bank of America would pay-off the original loan and also offered to "Pay all Fees" for the Bank of America loan.

37.     The Deed of Trust dated August 1, 2001 states that the final payment is due on August 13, 2016, which is consistent with the original terms of a 15 year Promissory Note.  (Exhibit A).  The Simple Interest Promissory Note dated August 1, 2001 shows the fixed rate of 7.25%.  (Exhibit A).  It also shows the final payment due on August 13, 2016.  (Exhibit A).  The Settlement Statement dated August 1, 2001 shows that "Bank Pays All Fees."  (Exhibit A).

38.     Shortly after the loan was closed, Ms. Vu and Bank of America solicited plaintiff with a bi-weekly or bi-monthly payment plan ("PayPlan").  (Bank of America has also referred to this plan as a "bi-weekly" plan.  Notwithstanding the plan's name, however, it calls for payments twice a month, instead of once a month.)  Bank of America offered to automatically debit the Plaintiffs' account twice a month, on the fifteenth and the thirtieth each time in the amount of half of the total payment. Regardless of the plan's name, Ms. Vu told the Plaintiffs that the interest and the loan would be paid off faster under this PayPlan.  In exchange for agreeing to accept the new PayPlan, Bank of America and Ms. Vu offered to lower the fixed interest rate by 0.5%. The Plaintiffs agreed to Bank of America's offer of PayPlan.

39.     The Promissory Note was modified on September 21, 2001 to reflect the new payment plan terms under PayPlan.  (Exhibit B).  The Modification Agreement changed the payment date from the first of each month to the fifteenth and thirtieth of each month.  (Exhibit B).  It also changed the amount of each payment to half of the original amount.  (Exhibit B).  No other terms of the original agreement were changed.

40.     However, the Plaintiffs later discovered that they were not given the 0.5% rate reduction for switching to the new payment plan.  After inquiring with Bank of America for several months, the Plaintiffs finally talked with Derek Jenkins, Ms. Lila Vu's supervisor about the previously agreed rate reduction.   In apparent acknowledgement of its failure to abide by all of the terms of the initial modification, the loan was again modified on March 19, 2002 to reflect the previously agreed to agreed rate reduction and the corresponding reduced payment.  (Exhibit C).  The March 2002

modification reduced the fixed interest rate by 0.5% from 7.25% to 6.75% and reduced the bi-monthly payment from $643.73 twice a month to $430.47 twice a month.  (Exhibit C).  No other terms were changed.  No other Truth-In-Lending disclosures were made on either loan modification.

41.     For several years, Bank of America proceeded to make the automatic withdrawals and the Plaintiffs paid the loan pursuant to the payment plan agreements signed by the parties.  Then on August 13, 2009, Bank of America for no apparent reason, unilaterally cancelled the PayPlan plan Plaintiffs had been utilizing.  (Exhibit D). Bank of America unilaterally changed the terms and conditions of the payment plan. Bank of America now imposed fees for the automatic payment service.  Bank of America unilaterally changed the payment dates.  In short, the Plaintiffs were told that Bank of America unilaterally cancelled the agreed payment plan.  No explanation was provided to the Plaintiffs for the aforementioned changes.

42.     After Bank of America canceled their PayPlan, the Plaintiffs began investigating their loan history.  They discovered that not only did Bank of America cancel the agreed payment plan, but Bank of America also extended the agreed loan maturity date without any agreement, notice or Truth-In-Lending disclosures.  (Exhibit E).  The Plaintiffs also discovered other Bank of America improprieties.

43.     The Plaintiffs discovered that the payments under PayPlan were not timely executed.  Bank of America did not timely execute the payments, and instead persistently and purposely withdrew payments one to five days later than agreed, thereby subjecting

the Plaintiffs to greater interest charges than they would have been subjected to had the Bank withdrawn on the due dates as agreed.  (Exhibit F).

44.     Upon further investigation, Plaintiffs discovered that after cancelling their PayPlan the Bank began purposely and persistently miscalculating the daily interest charges that should have applied to their loan for the number of days between payments. The bank used a greater number of days between payments in its calculation than had actually occurred, resulting in more of Plaintiffs' payment going towards interest charges rather than being applied to, and properly lowering their principal balance.  (Exhibit G).

45.     Additionally, a number of unauthorized automatic withdrawals were also discovered.

### The Damages Sustained by Plaintiffs and the Classes

46.     As a consequence of Bank of America's policies and practices as to, 1) the later than agreed upon automatic withdrawal of loan payments, 2) the miscalculation of days between loan payments, and 3) the unilateral and undisclosed extension of mortgage loan maturity dates, Plaintiffs and the Classes have been wrongfully forced to pay higher interest charges than were actually due to Bank of America on their mortgage loans. Bank of America has improperly deprived Plaintiffs and the Classes of significant funds, causing ascertainable monetary losses and damages.

47.     As a consequence of Bank of America's policies and practices, as detailed above, Bank of America has wrongfully deprived Plaintiffs and the Classes of funds to which it had no legitimate claim.

48.     All conditions precedent to the relief sought herein have either occurred or have been performed or waived.

49.     The date(s) on which the causes of action herein began to accrue, if it is argued a statute of limitations applies to such causes of action or to any of them, is and/or was delayed by the "discovery rule."  To this date, Bank of America has not disclosed when or why it changed the contract terms, and Plaintiffs and Class Members could not have discovered the Bank's improper conduct with reasonable due diligence.  Thus, any statute did not begin to run or was equitably tolled until such time as the Plaintiffs have a reasonable opportunity to discover Bank of America violations.  Also, to this date, Bank of America is still changing the contract terms in that it still is enforcing its unilaterally changed terms.

50.     The date(s) on which the causes of action herein began to accrue, if it is argued a statute of limitations applies to such causes of action or to any of them, also is and/or was delayed/tolled by the continuing fraud of Bank of America and/or the fraudulent concealment of its own conduct by Bank of America.  Furthermore, the repetitive wrongful conduct of Bank of America, committed monthly and/or bi-monthly and/or weekly, constitutes a continuing tort.  Each monthly or semi-monthly or weekly withdrawal from Plaintiffs' and Class Members' accounts constitute a separate cause of action.  The statute of limitations for Plaintiffs' and Class Members' claims do not accrue until the conduct ceases.

## FIRST CLAIM FOR RELIEF
### Breach of Contract
### (On Behalf of the National Classes)

51.     Plaintiffs incorporate by reference the allegations set forth in paragraphs 1 through 50 above.

52.     The original loan agreements made between the Bank and Plaintiffs and Class Members are valid enforceable contracts.

53.     The Plaintiffs and Class Members were not in breach of their mortgage loan agreements with the Bank as they performed all, or substantially all, of their obligations pursuant to the agreements.

54.     Bank of America breached their agreements with Plaintiffs and Class Members by:

   a.     Purposely and persistently withdrawing mortgage loan payments from Plaintiffs' and Class Members' bank accounts on a date later than agreed, which resulted in Plaintiffs and Class Members incurring higher interest charges than they would have had the Bank not breached the agreements.

   b.     Purposely and persistently miscalculating the number of days between Plaintiffs' and Class Members' loan payments, such that a higher number of days was used in the simple interest formula than had actually occurred, which resulted in Plaintiffs and Class Members incurring higher interest charges than they would have had the Bank not breached the agreements.

      c.      Unilaterally modifying Plaintiffs' and Class Members' mortgage loan agreement payment terms and the maturity date of said agreements, which resulted in Plaintiffs and Class Members incurring higher interest charges than they would have had the Bank not breached the agreements.

55.      Plaintiffs and Class Members have sustained damages as a result of Bank of America's breach of contract.

**SECOND CLAIM FOR RELIEF**
**Declaratory Judgment**
**(On Behalf of the National Classes)**

56.      Plaintiffs incorporate by reference the allegations set forth in paragraphs 1 through 50 above.

57.      The Plaintiffs and Class Members also seek a declaratory judgment pursuant to 28 U.S.C. § 2201 and/or chapter 37 of the Texas Civil Practice and Remedies Code.  The Plaintiffs and Class Members request that this Court declare that the original mortgage loan agreements made by and between Plaintiffs/Class Members and the Bank constitute valid and enforceable contracts.

58.      The Plaintiffs and Class Members further request a declaration that the maturity date is the date as stated in the contracts and that the maturity date cannot be unilaterally changed by Bank of America.

## THIRD CLAIM FOR RELIEF
### Truth in Lending Act
### (On Behalf of the National Classes)

59.     Plaintiffs incorporate by reference the allegations set forth in paragraphs 1 through 50 above.

60.     The Truth-In-Lending Act ("TILA") is found at 15 USC § 1601, *et seq*. Congress delegated the implementation of the TILA to the Federal Reserve Bank of America.  The Federal Reserve Bank of America in turn issued Regulation Z, which comprises the set of rules for the TILA.

61.     Bank of America violated the TILA by unilaterally changing the terms of its agreements with Plaintiffs and Class Members without any TILA disclosures.  *See* Regulation Z, §226.20.  Bank of America did not disclose the payment schedule, number of payments, total amount financed, the APR, and the payment schedule at the time that it unilaterally changed the contract terms.

62.     Bank of America further violated the TILA by improperly charging interest on mortgage loan balances that was neither disclosed nor agreed to by Plaintiffs and Class Members

63.      Thus, Plaintiffs and Class Members are entitled to statutory damages, in addition to actual damages and attorneys' fees, as authorized and permitted under the TILA.

## FOURTH CLAIM FOR RELIEF
### Negligent Misrepresentation
### (On Behalf of the National Classes)

64.     Plaintiffs incorporate by reference the allegations set forth in paragraphs 1 through 50 above.

65.     Bank of America employees and representatives repeatedly represented to the Plaintiffs and Class Members that the only terms of their existing agreements with the Bank that would be modified/changed were those changes and modifications expressly reflected in the loan documents and subsequent loan modifications.  The maturity date and PayPlan terms were to stay the same.  Bank of America was also to pay all bank fees for the original loan closing.

66.     Bank of America also represented that by enrolling in PayPlan, Plaintiffs and Class Members would benefit from the convenience of automatic payment deductions and a faster loan payoff.  It further represented that it would withdraw such payments on the dates agreed to by the parties.

67.     Bank of America also represented to Plaintiffs and Class Members that it would calculate daily interest charges accurately such that a customer's loan payment was properly and appropriately applied and divided to interest and principal.

68.     Bank of America unilaterally changed the terms of its "contracts" without any prior notice or disclosures to the Plaintiffs and Class Members.  Bank of America's actions are unreasonable under the circumstances and constitute negligent misrepresentation.

69.     Bank of America made these representations in its course of business with Plaintiffs and Class Members and has a pecuniary interest in the agreements with Plaintiffs and Class Members.

70.     Bank of America provided false information to Plaintiffs and Class Members concerning their mortgage loan agreements including, but not limited to, agreed dates of withdrawal of automatic loan payments, the benefits of PayPlans, the calculation of simple interest daily charges, the amount of interest charges incurred, and loan maturity dates.  By providing such false information, Plaintiffs and Class Members were unable to make informed decisions in the course of their dealings with the Bank.

71.     Bank of America did not use reasonable care in conveying the false information to Plaintiffs and Class Members.

72.     The Plaintiffs and Class Members justifiably relied on the Bank's false information and have suffered a pecuniary loss as a result.

73.     Furthermore, Bank of America's actions constitute fraud, gross negligence, and malice under chapter 41 of the Texas Civil Practice and Remedies Code.  Thus, Bank of America is subject to exemplary damages.

### FIFTH CLAIM FOR RELIEF
#### Conversion
#### (On Behalf of the National Classes)

74.     Plaintiffs incorporate by reference the allegations set forth in paragraphs 1 through 50 above.

75.     Bank of America had and continues to have a duty to maintain and preserve its customers' mortgage loan accounts such that the accounts are not processed in such a

way as to diminish the monies of Plaintiffs and Class Members through its own wrongful acts.

76.     Bank of America has wrongfully collected interest charges it was not entitled to from Plaintiffs and Class Members, and has taken specific and readily identifiable funds from their mortgage loan payments in order to satisfy those wrongful interest charges.

77.     Bank of America has, without proper authorization, assumed and exercised the right of ownership over these funds, in hostility to the rights of Plaintiffs and Class Members, without legal justification.

78.     Bank of America continues to retain these funds unlawfully without the consent of Plaintiffs or Class Members.

79.     Bank of America intends to permanently deprive Plaintiffs and Class Members of these funds.

80.     These funds are properly owned by Plaintiffs and Class Members, not Bank of America, which now claims that it is entitled to their ownership, contrary to the rights of Plaintiffs and Class Members.

81.     Plaintiffs and Class Members are entitled to the immediate possession of these funds.

82.     Bank of America has wrongfully converted these specific and readily identifiable funds.

83.     Bank of America's wrongful conduct is continuing.

84.     As a direct and proximate result of this wrongful conversion, Plaintiffs and Class Members have suffered and continue to suffer damages.

85.     By reason of the foregoing, Plaintiff and Class Members are entitled to recover from Bank of America all damages and costs permitted by law, including all amounts that Bank of America has wrongfully converted.

**SIXTH CLAIM FOR RELIEF**
**Unjust Enrichment**
**(On Behalf of the National Classes)**

86.     Plaintiffs incorporate by reference the allegations set forth in paragraphs 1 through 50 above.

87.     Plaintiffs, on behalf of themselves and Class Members, assert a common law claim for unjust enrichment.

88.     By means of Bank of America's wrongful conduct alleged herein, Plaintiffs and Class Members were induced to pay higher interest charges because of the fraud, deception and undue advantage of Bank of America in its mortgage loan payments processing practices.  The Bank controls all of its processes and policies and Plaintiff and Class Members have no control over the Banks processes and policies.

89.     Bank of America knowingly received and retained wrongful benefits and funds from Plaintiffs and Class Members.  In so doing, Bank of America acted with conscious disregard for the rights of Plaintiffs and Class Members.

90.     As a result of Bank of America's wrongful conduct as alleged herein, Bank of America has been unjustly enriched at the expense of, and to the detriment of, Plaintiffs and Class Members.

91.     Bank of America's unjust enrichment is traceable to, and resulted directly and proximately from, the conduct alleged herein.

92.     Under the common law doctrine of unjust enrichment, it is inequitable for Bank of America to be permitted to retain the benefits it received, and is still receiving, without justification, from the imposition of higher interest charges to Plaintiffs and Class Members in an unfair, unconscionable, and oppressive manner.   Bank of America's retention of such funds under circumstances making it inequitable to do so constitutes unjust enrichment.

93.     The financial benefits derived by Bank of America rightfully belong to Plaintiffs and Class Members.   Bank of America should be compelled to disgorge in a common fund for the benefit of Plaintiffs and Class Members all wrongful or inequitable proceeds received by them.   A constructive trust should be imposed upon all wrongful or inequitable sums received by Bank of America traceable to Plaintiffs and Class Members.

94.     Plaintiffs and Class Members have no adequate remedy at law.

**SEVENTH CLAIM FOR RELIEF**
**Texas Deceptive Trade Practices Act**
**(On Behalf of the State Subclasses)**

95.     Plaintiffs incorporate by reference the allegations set forth in paragraphs 1 through 50 above.

96.     The PayPlan auto-debit services and calculation of interest per mortgage loan agreements offered to Plaintiffs are an integral part of this case.   Consequently, the Plaintiffs are consumers under the Texas Deceptive Trade Practices Act ("DTPA") and assert that Bank of America violated the DTPA.

97.     Bank of America represented that it entered an enforceable contract. However, Bank of America simply changed the terms of the "contract" as it saw fit. Bank of America represented that the Note and Modifications conferred rights and obligations that it apparently did not have in violation of § 17.46 of the DTPA.  More specifically, Bank of America violated sections 17.46(b)(2), 17.46 (b)(5), 17.46(b)(7), 17.46(b)(i), 17.46(b)(12), 17.46(b)(24), and 17.50(a)(3).

98.     Moreover, Bank of America's acts constitute unconscionable actions that took advantage of its customers' lack of knowledge to a grossly unfair degree.

99.     Because Bank of America intentionally and knowingly unilaterally changed the payment terms and maturity date, it is liable for treble damages, mental anguish damages, and reasonable and necessary attorneys' fees.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, on behalf of themselves and the Classes demand a jury trial on all claims so triable and judgment as follows:

1.     Declaring Bank of America's mortgage loan policies and practices, as described herein, to be wrongful, unfair and unconscionable;

2.     Restitution of all improperly charged interest fees paid to Bank of America by Plaintiffs and the Classes, as a result of the wrongs alleged herein, within the applicable statutes of limitations, in an amount to be determined at trial;

3.     Disgorgement of the ill-gotten gains derived by Bank of America from its misconduct;

4.     Statutory damages as allowed by applicable laws and regulations;

5.      Actual damages in an amount according to proof;

6.      Punitive and exemplary damages;

7.      Pre-judgment interest at the maximum rate permitted by applicable law;

8.      Costs and disbursements incurred by Plaintiffs in connection with this action, including reasonable attorneys' fees pursuant to applicable law; and

9.      Such other relief as this Court deems just and proper.

Dated:  June 27, 2011

> Respectfully Submitted,
>
> /s Anthony G. Buzbee
> **Anthony G. Buzbee, Attorney in Charge**
> (Texas Bar No. 24001820; Federal Bar No. 22679)
> THE BUZBEE LAW FIRM
> JP Morgan Chase Tower
> 600 Travis, Suite 7300
> Houston, Texas 77002
> Tel:  (713) 223-5393
> Fax:  (713)223-5909
> Email:  tbuzbee@txattorneys.com
>
> **Jeremy W. Alters**
> (Fla. Bar No. 111790)
> Email:  jeremy@alterslaw.com
> **David C. Rash**
> (Fla. Bar No. 0977764)
> Email: david@alterslaw.com
> **Matthew T. Moore**
> (Fla. Bar No. 70034)
> Email: matthew@alterslaw.com
> ALTERS LAW FIRM, P.A.
> Miami Design District
> 4141 NE 2nd Avenue
> Suite 201
> Miami, Florida 33137
> Tel:  (305) 571-8550
> Fax:  (305) 571-8558

**Minh Tam (Tammy) Tran**
(Texas Bar No. 20186400; Federal Bar No. 328541)
Email: ttran@ttran-lawfirm.com
**Pete Mai**
(Texas Bar No. 24029702; Federal Bar No. 1033613)
Email: pmai@ttran-lawfirm.com
**John Na**
(Texas Bar No. 24074786; Federal Bar No. 1125428)
Email: jna@ttran-lawfirm.com
THE TAMMY TRAN LAW FIRM,
ATTORNEYS AT LAW, L.P.
2915 Fannin Street
Houston, TX 77002
Tel:  (713) 655-0737
Fax:  (713) 655-0823

*Attorneys for Plaintiffs*